In the Matter of Disciplinary Proceedings Against
Jeffrey Reitz, Attorney at Law:

Office of Lawyer Regulation,
Complainant-Respondent,

v.

Jeffrey Reitz,
Respondent-Appellant.

Supreme Court

*No. 2007AP2935–D. Oral argument May 1, 2009.
—Decided July 23, 2009.*

2009 WI 90

(Also reported in 769 N.W.2d 566.)

460

For the respondent-appellant there was a brief by *Jeffrey Reitz* and oral argument by *Mark A. Kent* (counsel for J. Reitz) and the *Mark A. Kent Law Office,* Wauwatosa.

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe Krohn Pope LLP,* Edgerton, on behalf of the Office of Lawyer Regulation, Madison, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. Attorney Jeffrey Reitz appeals Referee Richard C. Ninneman's report recommending the court suspend Attorney Jeffrey Reitz's license to practice law for four months as discipline for his professional misconduct, require restitution to one client, and impose the costs of this proceeding. Attorney Reitz does not challenge the referee's findings of facts or conclusions of law, and he does not oppose the recom-

mended restitution. The only issue before the court is the appropriate discipline for Attorney Reitz's misconduct.

¶ 2. We agree with the referee's findings and conclusions of law, and we agree that restitution to one of Attorney Reitz's clients is appropriate. However, we conclude that a 90–day suspension is adequate to address Attorney Reitz's misconduct. We also impose the full costs of the disciplinary proceeding.

¶ 3. Attorney Reitz was admitted to practice law in Wisconsin in 1981. In 2005 Attorney Reitz was suspended for 5 months for 13 counts of professional misconduct arising from Attorney Reitz's representation of 6 clients. *In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, 279 Wis. 2d 550, 694 N.W.2d 894. The allegations in that disciplinary matter generally consisted of failure to communicate with clients and lack of diligence. His law partner at the time of many of those violations was also sanctioned. *See In re Disciplinary Proceedings Against Mandelman,* 2006 WI 45, 290 Wis. 2d 158, 714 N.W.2d 512.

¶ 4. All of the allegations in the current complaint involve a business referral relationship that Attorney Reitz's law firm ("the law firm") maintained with a chiropractor, Dr. D. Attorney Reitz or his partner, Attorney Mandelman, and certain clients would execute a doctor's lien whereby the client and the law firm agreed to pay for Dr. D.'s chiropractic services out of anticipated settlement proceeds.[1]

¶ 5. The OLR complaint alleged that in 15 cases where such a lien existed, the law firm failed to send proper written notice to Dr. D. when settlement funds

---

[1] In at least one case Attorney Reitz executed the lien on behalf of the law firm.

462

were received. In some cases the law firm did inform Dr. D. that a settlement had been received. However, the referee ruled these communications did not satisfy the supreme court rule requirements, and Attorney Reitz does not contest that finding.

¶ 6. In many of these cases the law firm did not pay the full amount of the chiropractic bill. Notably, neither Attorney Reitz nor the law firm necessarily benefited financially from the law firm's failure to pay these chiropractic bills in full. The record reflects the law firm or the client sought to negotiate a fee reduction in these cases.

¶ 7. At some point Dr. D. retained a collection firm to pursue these accounts. On at least two occasions the law firm wrote checks in partial payment of a client's chiropractic bill with the intention of settling the fee dispute in full. In both cases the proffered settlement check was promptly endorsed and cashed, but Dr. D. claimed he did not receive these monies. The license of the collection firm employed by Dr. D. was later revoked for failing to turn over collected funds to clients.

¶ 8. Dr. D. initiated small claims cases against some of these clients to recoup his fees. Eventually, Dr. D. agreed to take remaining fees held in the law firm's trust account in satisfaction of these obligations. He obtained a judgment against the client in three matters.

¶ 9. On February 4, 2006, after Dr. D. had filed a series of grievances against Attorney Mandelman, the law firm and Attorney Mandelman (in his personal capacity) filed a civil action against Dr. D. seeking a declaratory judgment that all chiropractic fees due and owing to Dr. D. had been paid. Dr. D. did not respond to the complaint. On June 22, 2006, the Milwaukee County circuit court issued a default judgment ruling that if the law firm transferred amounts remaining in

the law firm's trust account to Dr. D., this transfer would satisfy the law firm's obligations to Dr. D. in full. The judgment did not absolve clients of potential indebtedness to Dr. D.

¶ 10. The OLR filed the complaint in this disciplinary proceeding on December 21, 2007. The OLR complaint alleges that by failing to give Dr. D. written notice that settlement proceeds were received in several cases in which he was the treating chiropractor, and by failing to promptly deliver to Dr. D. the amount he was entitled to receive in accordance with the document signed by both the client and the law firm entitling Dr. D. to payment out of settlement proceeds, Attorney Reitz violated former SCR 20:1.15(b).[2]

¶ 11. The individual client matters at issue are summarized as follows:

April 1999 P.D. obtained a $10,000 settlement. Her chiropractic bill was $2,211.72. The law firm retained or disbursed only $426.75.

May 1999 A.R. obtained a $10,000 settlement. His $977.40 chiropractic bill was not paid.

May 1999 E.R. obtained a $10,000 settlement. His $505.40 chiropractic bill was not paid.

---

[2] Former SCR 20:1.15(b) (effective through June 30, 2004) provided as follows:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

June 1999 J.N. obtained a $10,000 settlement. The law firm paid $1,200 of his $1,905.10 chiropractic bill in February 2002.

January 2000 G.R. obtained a $10,700 settlement. The law firm paid $54.15 of a $4,523.10 chiropractic bill.

July 2000 D.W. obtained a $12,000 settlement. The law firm paid one-half of his $1,172 chiropractic bill.

August 2000 J.S. obtained a $25,000 settlement. The law firm sent $1,400.64 to a collection agency to cover the $1,445.65 bill, but Dr. D. did not receive the payment.

January 2001 G.B. obtained a $3,967 settlement. The law firm sent Dr. D. $322.33 to satisfy his $890 chiropractic bill.

January 2001 J.K. obtained a $6,900 settlement. Dr. D. eventually accepted $405 in settlement of his $865 bill after filing a small claims action against J.K.

May 2001 E.G. obtained a $6,250 settlement. Dr. D. obtained a small claims judgment against E.G. in the amount of $3,409. It appears this was not paid.

May 2001 S.R. obtained a $6,250 settlement. Dr. D. obtained a $3,451 default judgment against S.R. It appears this was not paid.

October 2001 J.H. obtained an $82,500 settlement. The law firm sent a check in the amount of $1,299.64 in satisfaction of a

| | $2,565.10 chiropractic bill, but Dr. D. denies receiving the payment. |
|------------|----------------------------------------------------------------------|
| August 2002 | J.Z. received a $20,000 settlement. The law firm did not pay a $2,443.89 chiropractic bill. |
| March 2003 | A.G. received a $3,300 settlement. The law firm retained in trust $500 toward a $4,813.60 chiropractic bill. It appears Dr. D. did not receive payment in this matter. |

¶ 12. In February 2001 client B.S. obtained a $23,000 settlement. The client's file contained two bills from Dr. D. One bill was from 1999 and was in the amount of $6,616.88. The other bill was from February 2001 and was in the amount of $3,400.04. The law firm had retained $8,717.88 in trust. Dr. D. initiated collection proceedings against B.S. when the law firm failed to pay his bill. The law firm then failed to confirm the correct amount of the chiropractic bill and sent a check to the collection agency in the amount of $5,600. The collection agency promptly endorsed and cashed this check, but Dr. D. never received the funds. Dr. D. then initiated a small claims action against B.S., obtaining a default judgment. It is undisputed that the client is entitled to $2,199.96 reflecting an overpayment made to the collection agency.

¶ 13. Following an evidentiary hearing at which each of these matters was presented, the referee concluded there was clear and convincing evidence that Attorney Reitz violated former SCR 20:1.15(b) in these 15 client matters. The referee recommended restitution to client B.S. in the amount of $2,199.96 because of the law firm's overpayment to the collection agency.

¶ 14. Attorney Reitz does not challenge the referee's findings and does not challenge the recommended restitution. Rather, he contends that the recommended suspension of four months is excessive.

¶ 15. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 16. The OLR points out that in *In the Matter of Disciplinary Proceedings Against Riegleman,* 2003 WI 3, 259 Wis. 2d 1, 657 N.W.2d 339, Attorney Riegleman received a 60–day suspension for a *single* instance of conduct similar to the 15 separate counts of misconduct committed by Attorney Reitz. However, Attorney Riegleman actually endorsed a check made out to the lienholder without permission, thus violating SCR 20:8.4(c) as well as failing to promptly notify the insurer, in writing, of funds in which the insurer had an interest, thus also violating SCR 20:1.15(b).

¶ 17. The OLR also cites *In re Disciplinary Proceedings Against Collins,* 2004 WI 9, 268 Wis. 2d 441, 674 N.W.2d 566, in which this court imposed a 60–day suspension for eight separate counts of misconduct involving three separate client matters. Attorney Collins had previously received two public reprimands. Again, however, this matter is distinguishable on its facts.

¶ 18. Attorney Collins engaged in two counts of neglect, two trust account violations, two instances of

failing to cooperate with the OLR investigations, one count of disobeying a court order, and one count of failure to keep a client reasonably informed about a hearing in her case. Attorney Collins failed to deposit a settlement check into his trust account and failed to instruct his client to endorse that settlement check so a lienholder could receive payment. He also failed to timely file a guardianship report in another matter involving a minor, failed to cooperate with the board and the administrator in the investigation, prosecution and disposition of a grievance, and failed to appear at certain hearings or advise clients of hearings. We deem Attorney Collins' misconduct more egregious than the misconduct committed by Attorney Reitz in this matter.

¶ 19. We do find *In re Disciplinary Proceedings Against McNeeley*, 2008 WI 91, 313 Wis. 2d 283, 752 N.W.2d 857, instructive. Attorney McNeeley was suspended for 60 days in connection with his distribution of settlement proceeds without obtaining proper conflict waivers or providing proper notice to potentially interested parties. There, as here, Attorney McNeeley failed to comply with certain notice requirements but did not benefit financially from that failure. However, while we are mindful that Attorney Reitz did not personally benefit from the admitted trust account violations, we note that he has been previously disciplined for misconduct.

■

¶ 20. Ultimately, imposition of discipline in attorney disciplinary cases is not an exact science. Upon careful consideration of the record and the parties' briefs, we conclude that a 90–day suspension is adequate discipline for Attorney Reitz's misconduct together with restitution to B.S. in the amount of $2,199.96 and

imposition of the costs of the disciplinary proceedings, which total $9,488.08 as of May 15, 2009.

¶ 21. IT IS ORDERED that the license of Jeffrey A. Reitz to practice law in Wisconsin is suspended for a period of 90 days, effective August 31, 2009.

¶ 22. IT IS FURTHER ORDERED that Jeffrey A. Reitz shall comply with the requirements of SCR 22.26 pertaining to activities following suspension if he has not already done so.

¶ 23. IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey A. Reitz shall pay restitution to B.S. in the amount of $2,199.96 as recommended in the referee's report. If the restitution is not paid within the time specified and absent a showing to this court of his inability to pay the restitution within that time, Jeffrey A. Reitz's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 24. IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey A. Reitz shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Jeffrey A. Reitz to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 25. IT IS FURTHER ORDERED that the restitution to B.S. is to be completed prior to paying costs to the Office of Lawyer Regulation.